As you all are aware, we just have one case this afternoon, an important case, certainly. All of you, both of you, are familiar with our lighting system. I see that you have reserved five minutes for rebuttal, but do watch the lights. You have no authority to extend your time, but we do. With that, we will hear first from Mr. Ellis. Good afternoon, Your Honors, and may it please the Court. Richard Ellis for Appellant John King. This Court has granted a COA on whether King's trial counsel were ineffective in presenting his case for actual innocence, which I'll call the IAC Innocence Claim. I think it is important to initially determine the standard of review, since this is under dispute by the Director. This claim was not presented in King's initial state habeas petition, but in his federal petition. When the federal proceedings were held in abeyance and the claim was presented in the state courts, it was not adjudicated on the merits. It was denied in 2012 as, quote, an abuse of the writ without considering the merits of the claims. And a prerequisite to deferential standard of review under AEDPA, under 2254D, is that the claim must be adjudicated on the merits in state court proceedings, which this claim was not. The Director has argued that this claim is exhausted. And I should mention that this Court, in the opinion granting a COA, has already held that this claim was basically held that King's claims on appeal were not addressed on the merits by Texas courts. And thus, the deference typically given under AEDPA does not apply here. And we review the merits de novo. That's on page 6, note 8 of the COA opinion. The Director's arguments that this is exhausted really do not comport with the record. First of all, the argument is waived. This is a change of position from their position in the district court and their position in this court in opposing a COA. Can this issue be waived, though? Isn't it an issue of what our standard of review would be on an exhausted versus an unexhausted claim? Judge Southwick, yes, there is some authority that a standard of review cannot be waived. Even if we say it cannot be waived, we're still left with the issue of estoppel because the district court relied heavily upon the argument that this claim was unexhausted in the district court. So even if we're leaving aside the waiver argument, we have an issue here of estoppel. This was a case in which the district court judge relied heavily on the Director's pleadings and on their arguments for non-exhaustion. So that's a separate issue, but I think it still applies here. I think you can move on from that. Just a thought I had in reading the briefing, and I'm not trying to do anything other than see your thoughts on it and the opposing counsel's thoughts. Where does the rule fit in that we can affirm on any basis supported by the record? That's the Vasquez case, Your Honor. There are probably several cases that that's been pulled out and used in case law. Well, certainly that would not – well, we're asserting here the Martinez-Trevino exception to procedural default. So basically there was no adjudication in the state courts on this claim. The Director has tried to pull out two other claims that were decided on the merits, the alibi claim and the failure to present an insanity defense. They have nothing to do with this claim. Those claims are not under consideration here, as this Court has already ruled. So we have no state court determination to defer to, and so there's nothing here underlying – there's no deference here. We review this de novo because the subsidiary claims here are not under review. This Court has specifically excluded them from the COA standard. What's the basis, the factual basis, the alleged factual basis for the actual innocence claim that's different from the alibi? Well, the alibi was presented in three sentences in the state habeas petition. It does not go to actual – it goes to a failure to produce a witness for an alleged alibi, which was never produced. It was – the alibi defense – we have singled out five main failures that the state court singled out, that the CCA singled out in the opinion as pointing to Mr. King's guilt, and we have shown that all five of those could have been effectively challenged by the defense. So the alibi defense here is not really under consideration. It's a three-sentence throwaway claim that was never developed. There was never any evidence presented to support that claim in the state court. So that's why we're saying that this is – and it's been held by the – even the district court held this too, that these were separate claims. These are not under consideration here. This court has held that they're separate claims and they're not under consideration here, and this court has denied a COA on them. So we can't – the director has changed position and now says that this claim is exhausted to get the EDPA standard of review in, and we're saying that that's not – you know, there's been reliance on this by the district court. That's where estoppel comes in, and this is a change of position here. There's – even if it can't be waived, there's still estoppel. But there's also other reasons here why this – clearly not the same claim, and the director has tried to shoehorn this case into the holding of Ward v. Stevens, where Ward was a case where the evidence presented in federal court was substantially overlapped and duplicated the evidence presented in the state courts, and that's not even remotely true here. There was nothing except these two claims that are not under consideration today. This claim was not presented in the state courts. So we are left with the novel review and the exception to procedural default under Martinez and Trevino. Unless there's any other further questions on exhaustion, I'd like to move on to the E2 argument. This is another argument not presented in a district court. Let me ask you about the E2 because the E2 issue matters only if there was evidence that matters that was available but wasn't presented to the state court, right? Yes. And so what is that evidence? What is the evidence that Mr. Heath, I believe it was, should have presented in the state court that he didn't – that would make a difference in the outcome of the case, of the habeas case? Those are strict – Strickland, the novel review arguments, which is the – for instance, the deficient performance here, we're basing it on five major things that were not presented here, cigarette butt, for instance. No, I'm asking for the – I understand the arguments that weren't presented, but what I'm saying is y'all are – the E2 issue has to do with new evidence being presented to the federal district court that wasn't presented in the state court. And in my view, this issue of what does E2 mean and does it apply in the Martinez context and all of that matters only if there was evidence that Heath should have submitted and didn't that would affect the outcome. I'm asking what is that evidence, like what witness, what document, what – that's what I'm asking. What is that evidence that matters, that changes the outcome that Heath did not submit that should have been submitted in the state habeas? That's what I'm asking. As opposed to he should have argued it better, the effect of the cigarette butt or the effect of anything else. Well, there was – the cigarette butt has to do with their forgetting that the cigarette butt was not conclusive as to Byrd. But you can go to the trial record and argue that. You don't need new evidence. I'm looking for what is the new evidence that's not in the trial record, that's not in the state court record, that should have been part of the habeas record, but Heath ineffectively didn't put it in there. That's what I'm asking about, and I'd like you to tell me what that is. There's plenty of that evidence. It includes evidence that this was never a racially motivated crime. There's evidence here that King never tried to recruit anybody to this alleged racist gang after his release from prison. We have evidence here that – Evidence. That's a witness. So tell me about that, the witnesses. I'm not looking for general statements. I'm looking for this guy or this document or whatever. We have evidence here that King was prejudiced by failure to present the evidence relating to his desire to move to Georgia. This would be from his natural father, Samuel Ray. He had plans to, within months of this killing, to move. That was never presented, never investigated even. We have evidence that was not presented regarding Sean Berry's drug use to support the drug deal motive. We have evidence. Who was that witness that you want to talk about? That was, I think it was Keisha McNeely. We have other evidence, also from Keisha McNeely, that the cigarette lighter was freely available to everyone in the apartment. That was never presented. We have evidence from failing to rebut, I'm sorry, Roy Beerbaum. He was a witness that did actually most of the tattoos. He was not called at the trial. John Mosley, who was, did not really do most of the tattoos. However, Roy Beerbaum could have negated the state's evidence that the tattoo of the black person hanging in a tree was racially motivated. That's kind of a, you just saying that, you know, somebody coming to go, oh, well, you know, that just was for fun. Well, you know. Roy Beerbaum did explain that these were like taken from comic books and other things, and they were really not very well explained by. No, and I didn't think that explanation sounded real good. A black person hanging from a tree is not a racial comment. It strikes me as a very odd, odd statement. He also explained that in the prison tattooing system, they don't have colors, it's only black. So it's a person hanging from a tree. And that, I think, would have helped. I thought your evidence, and I don't know if this is evidence, considering Judge Hange's point, but there was at least argument that he was going to testify this had something to do with medieval matters and whatever dark spaces there are in lore about that. So who was being hung? You wanted to make a question through Bernbaum, I suppose. Yes. Who that is on that tree you thought could have been disputed. Well, that could have been disputed. I think there's a lot more important things that could have been disputed, however. We have evidence that the sandals were really never developed at trial. I don't know if you want to say this is record-based or not record-based, but certainly the FBI agent testified that the size sandals that the blood was found on were Louis Berry's sandals and not John King's sandals. Well, he didn't say that. He said the thing about the size. And we have the issue that this isn't talking about somebody who has a size 11 feet and we're talking about a size 8 shoe. This is within a half a size, and we all know, there's very few people I know who have exactly the same size in every single shoe they wear. To me, this notion of, well, it's 9 1⁄2 and he's 10 or he's 10 and it was 9 1⁄2. Well, the problem there is that the defense counsel gave a very prejudicial argument. All he said was, I can guarantee that he's not a size 11, which is what he said. He lied at trial. He said he's a 10 1⁄2, 11. It's not between a 9 and a 9 1⁄2 and a 10. So he could have been Louis Berry. He could have been discredited at trial had he gone back to that. Was Louis Berry's alibi challengeable? Well, we would like to challenge it, but we've never been given discovery or an evidentiary hearing. His alibi was that he was we don't know who it is or why it's reliable or anything. The best I've been able to discover is that he was in his house at 1 o'clock. However, these events happened after 1 o'clock. So we really don't know really where he was or how reliable. With Mr. Falk? Yes, with Mr. Falk, yes. That's correct. Why isn't that an alibi? Because the alibi was up until 1 a.m. he was in Mr. Falk's house. And these events occurred well after 1 a.m. We have people, they left the apartment around 1 30. But to continue the answer to your question, Judge Haynes, they could have called King's initial attorney, J. Randall Walker, who could have confirmed about giving King the evidence which described the sandals as having a dark brown substance on them. This was never followed up. This was important because the letter from King to Brewer was taken as very incriminating because it said, you know, I don't know if my clothes have a dark brown substance on them. So this could have been cleared up by Randall Walker telling the jury that this indeed was not King's words, but these were a description. That same letter says the thing about being proud of it. Why would you want to highlight that letter and nick and pit on one part and then they've got this giant thing that they'll go over and over again? Well, that doesn't necessarily have to be construed as a sense of admission of anything. I mean certainly King had racist views. Nobody is disputing that. But what he was, and this is I think gets back to the whole failure to present the theory that basically, which I think is very supportable, that this was never a race hate crime in the first place. This was a backwards drug deal gone bad. We have Sean Berry using steroids. We have evidence that Mr. Bird was dealing in drugs. But no evidence that he was dealing in steroids. That is correct, Judge Haynes. So then that's a problem because not all drugs are the same. So Bird had some other types of drugs, but he wasn't in steroids, so how could this be the steroid deal gone wrong? Well, Berry was interested in weight lifting. There's weight lifting equipment in the apartment. This is something that basically Brewer, in his statement, confirms that there was steroid use going on here. Lewis Berry said he didn't know that his brother was involved with steroids. But Bird's connection to that, that's the hard part. I think you have some evidence of steroid use by some of the alleged wrongdoers, but as far as Bird, I don't see that. I don't see any indication he was a steroid dealer or had anything to do with steroids. Well, the records don't indicate that. That is correct. But I would like to also mention that the ‑‑ I'm sorry. I think I've covered most of the evidence that could have been presented in support of the innocence claim here. There's also evidence that originates from the trial record that was not developed here by counsel, such as the shoe size. The cigarette butt was misrepresented by counsel. I think they didn't really understand that it did not involve Bird's DNA. Certainly the plan to relocate to Georgia is important. The cigarette lighter, for instance, also could have been shown to be freely available to anyone in the apartment that night through Keisha Atkins McNeely. Russell Brewer says that he took the cigarette lighter. There were lots of things found at the scene of the crime that, for instance, a CD belonging to Louis Berry was found at the scene of the crime. A lug wrench belonging to ‑‑ with Berry on it was found at the scene of the crime. There were lots of things here that could have been done to discredit the state's claim here that this meant that King was at the scene of the crime. Let me hear how you would use E2 in this case, despite the case law that's already there. We have Martinez Trevino that allows, if cause and prejudice is shown under that, for unexhausted claims to be pursued. But just looking at the statutory language, I'm at least open to the argument the state has made that E2 means what it has historically meant, not ancient history, but that the defects of the counsel in presenting evidence are assigned to the defendant himself, and you don't therefore have a factual predicate that could not have been previously presented. So what do you have for us that E2 should be read to allow new evidence to be introduced on the merits of the ineffective ‑‑ on the merits of the missing evidence? This case is a particularly poor case in which to apply E2 for many reasons. The cases relied upon by the director, Cullen v. Pinholster and Williams v. Taylor, they all predate the exception under Martinez Trevino. Cullen ‑‑ Pinholster, for instance, is really not applicable where there's been no adjudication on the merits. But the Supreme Court is very big on saying they're the ones who get to say their precedent has been overruled by subsequent precedent. And if they don't say it, if they don't say in case number two that case number one is now overruled or partially overruled, we the Fifth Circuit or other circuit judges are not equipped to do that. So we have to follow the precedent until they say. Even if we're reading tea leaves correctly, they still don't think we need to be doing that. That's not our role. So we are bound by the statute's language and these cases unless and until the Supreme Court says, oh, we now expand Martinez to also cover E2. Right? Yes. And I would note in that vein that no circuit court of appeals has adopted the director's reading of E2. They have tried this in various cases. I think this is an argument currently under consideration by the Supreme Court in the Carlos A. Estes case. The court may want to relate, wait for that determination, but this is a much less You want to get Estes overturned, don't you? Yes, we do. As you should. We do very much. But this argument didn't seem to get much traction in the oral argument in the Estes. I don't know how that's going to turn out. What circuit has ruled on this other than the Ninth Circuit? Yes, the Ninth Circuit has ruled against this. What circuit has other than the Ninth dealt with this? The Eleventh Circuit has also ruled against it. Yes, Your Honor. It doesn't say anything helpful to you, the Eleventh Circuit. Well, I think it does. It really does. This is Henry v. Warden, 750, Fed 3rd, 1226, at 1231-32. They really do say that the – and they go along with the Ninth Circuit in Dickens that basically E-2 does not apply when you have no adjudication on the merits here. So you have two circuits that have weighed in, Ninth and the Eleventh Circuit, against this position. You have no circuits that have weighed in for it. But as I was saying, this case is a particularly poor example. If the court wants to apply E-2, this is not the case to do it because there's been no adjudication on the merits here. E-2 deals with the availability of an evidentiary hearing and new evidence, which are context- and fact-specific, which should be done really by the district court, not this Court of Appeals. This court has post-Martinez-Trevino remanded cases to the district court with orders that would not necessarily preclude fact development through an evidentiary hearing. Now, is it possible that this evidence you talked about, say Birnbaum's testimony, could be used to prove the Martinez cause and prejudice but then excluded to consider the underlying claim of ineffectiveness of trial counsel once the Martinez hurdle is jumped? No, Your Honor, because it wouldn't make any sense to do that. Because if you're having a hearing here, all of the evidence would be relevant to ineffective assistance of counsel because it wasn't, or most of it would be, because it wasn't presented at trial. So how could we have a hearing, ever have a hearing, and exclude this new evidence from consideration? Well, I'm saying that it's a two-step process when you're talking about ineffectiveness of trial counsel that was not raised in State habeas. First you have to show State habeas was ineffective in failing to raise it, and then you have to win on the merits of the ineffectiveness. That gets you in the door to now consider the otherwise barred claim, procedurally barred claim, on its merits. So those are two steps. So why couldn't you say, well, E2 doesn't apply to the Martinez exception, and therefore there we can consider the evidence to determine whether the procedural bar is overcome. But now we're here on the merits of the trial lawyer's ineffectiveness. We have to apply E2 on its face. Well, that would make the hearing nonsensical because we wouldn't have anything to hear because by definition the Martinez-Trevino exception goes to evidence that was not presented to the State courts in the first instance. So it wouldn't make any sense to really limit it. It goes to evidence. It goes to a claim. It goes to a very specific claim, ineffectiveness of trial counsel and the failure to raise that in State habeas. That's all it goes to. And it itself is a step. It's a way of overcoming an otherwise unovercomeable procedural bar. Well, yes, but I guess the point I'm trying to make is here that if we get to the hearing here, and I think, by the way, we've shown massively ineffective assistance of State habeas counsel. The habeas writ was basically some claims that had already been presented on direct appeal, and some claims were not. There was no evidence backing up the writ, just allegations here. It was 21 pages. It was boilerplate plus the alibi claim, for instance, was three sentences. But if we get to a hearing here, it's on ineffective assistance of counsel, but this evidence has to be new because, by definition, under Martinez-Trevino, it was not presented to the State court. So it all has to be new, so it would make Martinez-Trevino meaningless if we were to, at a hearing later on, exclude this evidence. Mr. Ellis, it seems to me that E-2 itself contemplates something like that. It doesn't depend on ineffective assistance, but it says, I almost used the word clearly, but context matters. I don't know how clear this is, but cannot proceed unless there's a factual predicate that could not have been previously discovered through the exercise of due diligence. So it contemplates that somebody was not diligent, and if so, that evidence is not admissible under E-2, and that's what you're talking about. Now, I'm not saying there's anything particularly I don't know if I would disagree with you that's a little bizarre to allow the door to be opened under Martinez-Trevino, but then you must proceed with the record evidence at hand for E-2. But if that's what Congress wrote in E-2, maybe it's for the big court to say otherwise. E-2 has a diligence. It says only if the petitioner was not diligent in developing the evidence. So we were diligent. We presented the state court with all of this evidence in the state successor petition. The state court ignored it. The state court wouldn't even appoint counsel or IFP status when we went back there. So we're saying that this is diligence under the main case that they cited, Williams v. Taylor. Williams v. Taylor, the court explained that failure to develop the factual basis of a claim is not established unless there is a lack of diligence or some greater fault attributable to the prisoner or the prisoner's counsel. And under Martinez-Trevino, this deficiency is not attributed to the petitioner. This is the exception that Martinez-Trevino gets out. So that's why I say this is a particularly poor case to apply E-2 because Williams really does not apply and Pinholster does not apply. So we have no state court adjudication to which to defer. So therefore, there is really, if the court were to adopt a director's reading of E-2, new evidence could never be presented to support a defaulted, ineffective assistance of trial counsel claim. All right, Mr. Ellis. May it please the Court. King's. Your name? LaFond. Sorry, Jason LaFond. Yes, sir. I apologize. May it please the Court. King's remaining IAC claim has no merit. King's counsel vigorously attacked the State's case, and King's current complaints before this Court are nothing more than hindsight nitpicking. In the view of this, though, is it that these new elements of actual innocence, what further evidence there may have been, really are not exhausted claims? I'd be happy to start with that, Your Honor. As this Court warned in Ward, there is a strong incentive for habeas petitioners and particularly capital petitioners to frame their IAC claims as new and procedurally default in order to take advantage of the Martinez exception. Ward's not a very good factual comparator, is it? It seems to me it was talking about family collapse, and I forget what the other issue was. But issues here, you're going about how certain pieces of evidence were never introduced at all. What was the significance of these tattoos? The cigarette butt, maybe not, but some other things. I'm not sure that Ward goes as far as the facts here go beyond the initial claim. Even if that is true, I would say that Ward, no, does not go as far. But the legal principle in Ward is that when you're looking at whether something is a new claim, you look at whether the legal posture is significantly different. And King's claim from the beginning, in State habeas and here, was that his trial counsel did not do enough to prove his innocence. The alibi evidence, just as you wouldn't separate out the cigarette butt evidence from the sandal evidence and make those separate claims, you wouldn't separate out the alibi evidence because they all go to the same substantive legal claim, which is that King's counsel did not do enough to prove his innocence. And Ward relied on this Court's decision in Anderson, which said that in order to make a new claim, the new evidence must create a, quote, 180-degree turn in the claim, quote. And it said that the – Where did we say that? Sorry? Where did we say that? In Anderson, Your Honor. That's fine, that's fine. And Anderson also said this. It said, for a claim to be new, the grounds of ineffectiveness must be entirely independent from the grounds raised in State court. And the grounds here are – So that means any IAC claim that's raised of any kind having to do with the trial of the case is now exhausted, even if it was totally not – nothing to do with what's being raised now. Your Honor, I would submit that it doesn't go that far. For instance, I think that – What's the limiting principle on your argument? Sure. I think that if you have – so a failure to investigate innocence, for example, that is clearly the same claim, but a conflict of interest or a failure to investigate mitigation evidence under Wiggins or certain things like that involve different legal principles and have different legal postures. And so if you bring in new evidence of ineffectiveness, for example, that goes to a conflict of interest or goes to failure to investigate mitigating evidence, then you would have what Anderson called a 180-degree turn. It is an alibi of defense versus saying – just trying to eat at the State's case and show reasonable doubt. I mean, it is a stronger version of the same claim, which is you didn't do enough to prove my innocence. One is you could have shown that all the State's evidence doesn't matter. The other, the new claim, is that, well, you should have nibbled at the State's evidence. But they are basically the same legal claim, which is that you didn't do enough to prove my innocence. And so the claim raised here has the same legal posture as the claim raised in State court. I mean, we've had a ton of cases – I mean, virtually every habeas case makes an IAC claim. I can't think of one that doesn't. I'm sure there may be a few. And almost all of them have something to do with should have done something different at trial, which goes to the question of getting me a not guilty verdict. We do have the bunch on sentencing. I agree. And I can put those aside for the moment. But we have traditionally kind of parsed those out by the basic subject matter of what you're claiming. And just saying IAC, you didn't win my trial, you didn't get me found not guilty, isn't enough to exhaust the, well, there was an alibi, there was the insanity defense, there was the you didn't talk about the cigarette, but you should have brought in an expert witness on this point. Well, I think, Your Honor, that the failure to investigate innocence can be separated out, not only from the claims I already mentioned, but, for example, requesting an incorrect jury instruction or failing to object to certain evidence. I think those are all easily separated out. But a failure to investigate claim is the same. You're just alleging different avenues that counsel should have investigated. And that's actually Ward. Ward, the complaintant state habeas was, well, you failed to investigate ABC. And then he came to federal court and said, well, you failed to investigate D. And the court said, that's not a new claim. This is an important point. I don't know how relevant it will be to the actual decision made here. We'll have to wait and see. But you're drawing the line awful, I don't know what, broadly, I guess it is. That's not a line. You're drawing the circle awful broadly as to anything that would have tended towards convincing jurors that the person didn't commit the crime. If he commits, if he submits one of those, but ineffective in presenting others, all of it's captured in that one category of trying to show this fellow didn't do it. And I don't read Ward as necessarily meaning that. You can pull out language that may or may not be directly applicable to Ward. But it just seems to me the better view of this, when you're trying to determine if it fits within the case law, of whether this particular ineffective assistance has, in fact, been explored by the state court or not, that if he has something as different as I wasn't even there, as opposed to attacking the circumstantial evidence that tended to show that he was there, direct evidence of an alibi, as opposed to attacking in various ways the circumstantial evidence that he committed this crime, that his tattoos show he hates black people, therefore, it's more likely he killed this guy. That just seems to be qualitatively different, not just quantitatively different. Well, Your Honor, I'm — I don't know what the standard is. I want you to help me, not just present the State's case. But what's the best way to view this? Well, I think the best way to view it is what Anderson said, which is that it must be entirely independent of the grounds for ineffectiveness submitted below. And the alibi is not entirely independent from attacking the other failure to— What his tattoo means is independent of where he was and whether this friend or acquaintance in town, was he supposed to be in Jasper? I forget where he's dropped off and would have been seen by somebody. That is independent. We're just playing with words here. That's independent of what to make of the cigarette butt and the tattoos and whatever else. Your Honor, I don't think so because it's not factual independence because it's what this case— It all goes towards creating reasonable doubt. Well, it all goes towards the subjunctive legal claim. This is how he has framed his claim— The lawyer didn't sufficiently create reasonable doubt of Mr. King's guilt. That, quote, trial counsel failed to present evidence of King's innocence. King not only relies on the same case law from State habeas that he relies on here, he mingles his alibi claim repeatedly in his briefing as evidence that his counsel failed to present evidence of his innocence. This court, in its COA opinion, called the alibi claim simply an aspect of this larger claim that trial counsel failed to— So you're saying that wasn't my shoe, that wasn't my cigarette, or that bird wasn't on the cigarette, that wasn't my this. It's all kind of part of I wasn't there, which is the same as the alibi. I wasn't there because I was somewhere else. Right. I wasn't there. There's this other evidence. You need to explain that evidence because I wasn't there. These are all parts of the failure to investigate innocence claim. All right. Let me ask you this. If we consider all the evidence that Mr. Ellis has discussed under the E-2 argument, and if we consider it under Danova review, do you lose? No, Your Honor. Tell us why. Well, the shortest opinion that this court could write is that, assuming everything, there's no prejudice here. King essentially admitted his guilt to this crime in his letter to Brewer where he says, I don't think there was any blood on my clothes. A person who is not involved in a crime does not have to think about that. When he says we've made history, we've made history doing what? We've made history killing James Byrd, Jr. Is there any other way to read that? There is absolutely no other way to read that. You have a failure to call Walker to say I told him about the thing on the shoes. But that only goes to the sandals. That doesn't go to the I don't think I had blood on my clothes. I mean there is nothing to explain why somebody would say I don't think I had blood on my clothes. I know I don't have blood on my clothes because I wasn't there. Why would he even bring it up? Well, they're not going to find evidence against me because I wasn't there is kind of what you're saying. He should have said it if he wasn't there. I'm not worried about this. And certainly not say we made history. We didn't make history by getting arrested for a crime we didn't commit. Sadly, that doesn't make history because it happens. Right. And the state presented substantial evidence that corroborated King's essential admission of his guilt. Well, while King complains and nitpicks various pieces of this evidence, there is simply too much to explain away in this case, and therefore there is not a substantial likelihood of a different result. I guess the problem is it's kind of hard to get around this guy. He's saying you can't bring up anything new in a state habeas. It just seems like what does this guy do in representing a death penalty defendant in a habeas case when he doesn't even have that basic an understanding? And you're saying he could have been incompetent. It doesn't matter because there wasn't an ISC claim to be made is essentially what you're saying. He was a good lawyer and did a good job, did the best he could. That's true, Your Honor, and I won't go too far in defending Mr. Heath, but I will say that from the other aspects in that letter and everything else he did, it was clear that he did know that you could bring up outside evidence. He requested an evidentiary hearing. He spoke to King about outside evidence. And so that lone misstatement cannot justify Martinez's exception here. Well, let me say our COA opinions seem to rely on that a fair amount. It's a different standard to allow this enough here to go forward. But it does seem to me I haven't looked at the record enough to know, but you do make the point in your briefing about various indications that Heath did try to develop additional evidence and introduce it. What do you see as the significance in the decision on the COA of that letter? Do you mean whether or not that's binding? No, no, no, no. That's a fair reaction. What am I asking you? Was that a significant factor in your mind? Because as I read that part of the opinion, and maybe that's where the famous footnote 13 is that both sides keep citing, it did seem to weigh heavily on the Court. And it seemed to me that, and I don't know if they weren't looking at this other evidence that you're talking about, but it seems like if that evidence is indeed contextually fit at the same time, regardless of what he said in that letter, Heath was trying to develop additional evidence that he wanted to introduce, then I'm not sure the panel was properly looking at the significance of that letter. I think that's right, Your Honor. The letter says that, and it goes on to say I've been looking into your mental background. You know, I need certain information. And the letter also indicates that King was refusing to cooperate with Heath, which would explain why his ‑‑ Cooperate? Yes. Counsel says to him, you have to start talking to me or else I can't do this petition. And if you actually go to the state habeas petition, you will see throughout there that Heath did recognize this as a potential basis, or at least recognize this potential complaint. He uses King's complaint about counsel's failure to raise evidence to bolster the claim that the Court should have substituted counsel, that counsel should have raised an insanity defense. He says to all of these things, well, King says that his counsel wasn't proving his innocence as he wanted him to. And so I think that from the full context of the evidence, it shows that Heath was able to ‑‑ King is unable to overcome the presumption that Heath considered this claim and for tactical reasons did not raise it, and for that reason cannot make it through the Martinez gateway. If I could, Your Honor, I'd like to turn to E‑2. As Your Honor noted, the text of E‑2 does not allow for the Martinez exception to come in and allow new evidence. The E‑2 ‑‑ Well, Your Honor, what the Court did in Martinez was it applied an equitable exception to court‑created procedural default rules. It did not change the meaning of AEDPA. It did not rewrite AEDPA. And what the Court did in Martinez was something ‑‑ it was very specific. It did not change the rule that attorney fault is imputed to the petitioner. What it said was for certain attorney fault, we're going to allow that to be caused under the cause and prejudice standard. Now, if you go back to Williams, what the Court said in Williams was that E‑2 replaced the cause and prejudice standard, and it replaced it with E‑2A and E‑2B. And those are the only ways that you can get around the failure to develop evidence. Now, what King wants us to do is to put a C in here and to say, well, you could also get around it if you raise an ineffective assistance of trial counsel claim that falls under Martinez. But Martinez cannot rewrite the statute that way, and this Court should not either. You're saying that E‑2 itself, Congress contemplated in AEDPA that someone could have completely failed to put in very important evidence, and that is just tough? Yes, Your Honor. What the Court said in Williams is that the word fail that Congress used in E‑2 came from Keeney v. Tamayo-Reyes. And in Keeney v. Tamayo-Reyes, the Court in Note 5 there says explicitly that attorney error and failure to develop evidence is fail. That is the same as the petitioner failing to develop evidence. And that, Williams says, that that is what Congress knew that it was codifying in E‑2. And this is now more complicated because of Martinez. Before, you never would have had this question because you wouldn't have let these claims in in the first place. But while Martinez could change the equitable doctrine of procedural default to allow these claims in, it could not have changed the text of E‑2, which Williams tells us unequivocally, just as Holland did, that attorney error is the same as petitioner error. And if I could, Your Honor, I could explain numerous ways in which numerous reasons why Martinez cannot govern this question. How about one reason? Sure, Your Honor. Well, I've already talked about the fact that it was an equitable exception, and this is a statutory interpretation case. Isn't that the main thing? That is the main one. You can't change the statute unless the statute itself is unconstitutional. And Martinez was decided 15 years after AEDPA was enacted. It cannot tell us anything about what Congress meant in enacting AEDPA, and Williams, in fact, has already told us. But also, Martinez said it had no starry decisis problems in deciding as it did because Coleman left open the possibility that procedural default for failure to raise a claim could be overcome by ineffective assistance of habeas counsel at the first habeas review. But Martinez could not have said that if it meant for its rule to cover E-2 because it would be overruling not only Keeney v. Tamayo-Reyes, it would be overruling Williams and it would be overruling Holland. And so that is yet another reason why Martinez cannot be read to change the meaning of E-2. I expect you would agree with the suggestion Judge Haynes made with your friend on the other side. It seems to me after Martinez we were faced, unless I got the cases backwards. Martinez is the Arizona case. After Martinez we were faced with how much further it would go, and it certainly seemed quite plausible they would apply to a situation like Texas where it's not absolutely prohibited to bring ineffective assistance issues on direct appeal but it's disfavored. But we were not willing to do that, though I think there was a dissent and maybe a bank dissent, and the Supreme Court told us what maybe the handwriting was, but we let them do it. So it seems to me at most, and I'm not saying that for certain, Mr. Ellis, but at most that may be where we are here. Whatever the make of all this, it's not for us to make it. This court has refused every invitation to expand Martinez beyond what the court said. There has been one court once who expanded Martinez, and that was an opinion by Judge Fletcher in the Ninth Circuit that expanded Martinez to cover ineffective assistance of appellate counsel claims, which the Supreme Court last term in Davila said no, you do not expand Martinez. And perhaps not coincidentally, Judge Fletcher is the same one who wrote the language that King quotes to say that, well, it doesn't make any sense to apply E2 here. And Fletcher was only speaking for four members of an 11-member en banc court in that case. That is not precedent in the Ninth Circuit. And the case that King cites from the Eleventh Circuit says only that E2 doesn't apply to the cause and prejudice question. Well, it's a tough world because the Supreme Court has made it clear that they're the arbiters of their own opinions, so we're not allowed to read tea leaves, but we can still be reversed for having failed to, in essence, read the tea leaf. But if we read the tea leaf, we'll also be reversed. So, I mean, we are where we are. The Supreme Court has not overruled Cullen in that line of cases, and so I think we're bound by him even if it makes no sense. And then it's up to the Supreme Court to square up its own precedence and make sense of it if it doesn't make sense. But your position is, and you heard his list of the evidence that he should have put on. What is your answer to that? Let's take a look at that. Let's assume arguendo that E2 does not apply, at least in part. What about the moving to Georgia with his natural father testimony, the Keisha McNeely testimony, the Roy Birnbaum testimony, and the Walker testimony? Sure, Your Honor. The moving to Georgia point, the counsel would have severely risked his credibility in arguing that King did not intend to establish a racist organization because he was planning to move to Florida because, as the evidence that we cited in our brief shows, King had written over and over again that he intended to establish, quote, in the Jasper area the Confederate, the Texas rebel soldiers of the Confederate Knights of America. Well, how about more fundamentally whether you moved to Georgia or not doesn't mean you don't care about where you came from. I moved to Texas a long time ago. I still care about Florida, where I'm from originally. So I don't know that it even matters that he – and he couldn't move on his own. He had to get permission, so we don't know how long that would take. So I mean I don't even see that that testimony proves anything. Your Honor, I think that's the next point. The first is that counsel should – any reasonable counsel would have avoided this in the first place because it is directly contradicted by King's words. And the second point is this evidence has very little value because whether he wanted to establish this organization before he moved or whether he would have changed his mind had he been able to move tells one nothing about what was in his mind and what he was planning to do at that point in time. It doesn't say anything about his attitudes about black people. It certainly does not, and that brings me – The move doesn't. No, no, and that brings me to the Roy Birnbaum evidence. I mean the thing about the person hanging on the arm, again, you have his own words calling this my little n-word, hanging man. He wrote some teenage girl that? Yeah, he wrote some teenage girl that, and he also said it to other people. And the Roy Birnbaum, King says, well, yeah, he brought on one tattoo artist, but he should have brought on another tattoo artist. I mean this falls directly – There was some evidence presented that, in fact, these tattoos were this prison thing. There was significant evidence. And so that, it's not, this is just kind of adding on to that. We cite a dozen instances in which King's counsel made the argument and elicited testimony that this was a defense mechanism in prison. And so King's counsel did attack this evidence. All King is arguing is that he should have done more, and this court has said numerous times that that is not a basis for an IAC claim. Are you still answering Judge Haynes' question? Well, I did have two other. Why don't you follow up? Mr. Ellis had two other witnesses that we haven't talked about, but, you know, it was the, we talked about the Keisha McNeely testimony about the drug use and the lighter, and then we did talk a little bit about Walker and the brown stains. So why don't you talk about Keisha McNeely? Sure. The drug use, as Your Honor noted, doesn't do much because there's no evidence that Byrd dealt in steroids. And the only evidence that we have that Sean Berry was involved in steroids is King's statement to the media, which is rife with falsehoods, and Brewer's deathbed rambling statement, which this court, which no court would apply any credibility to. There is simply nothing here to say that Sean Berry used steroids and even less to suggest that James Byrd Jr. sold steroids. The final piece of evidence was the lighter. My first argument to that is that I don't think there's any need for counsel to point out the obvious, which is Keisha Atkins, who I think is the same person, testified at trial that the lighter was on the counter. I mean, she testified to that. Now, what Louis Berry testified to was that that same night the lighter was in King's hand. And so having more testimony from Keisha Atkins going one step further and saying, so that meant that anybody could have access to it doesn't add anything, I would argue, to the trial. And so I want to make this point clearly. This court can bypass all of these issues about the scope of Martinez, but these are very important issues, and they recur regularly, and they make habeas proceedings much longer and much more complicated, not only for the district court but for this court, than they need to be when Martinez has come in. This court has an opportunity here to clarify the scope of the Martinez exception, and I would ask the court to take that opportunity. You mean vis-a-vis E-2? E-2, Your Honor, what is a new claim, and the standard for determining when the Martinez gateway is opened by deficiency, which is that the unraised IAC claim must be clearly stronger than any claim actually raised in state court. So those are the three issues in which we would ask this court to clarify the scope of Martinez, but I also want to be clear that our case does not rise and fall on that. King's IAC claim is meritless. You win regardless of what we decide. Is that what I'm hearing? Shockingly, I am arguing that. What a nice position to be in. Yeah. And if Your Honors have no further questions, I will leave. Thank you. Thank you, Counsel. Mr. Ellis. Thank you, Your Honor. I would like to address a few things, a few points that were made by the Director's Counsel. This court has already separated out the alibi claim and the failure to present the insanity claim in its opinion, not granting a COA on them. This is an argument. Are we bound by that? Excuse me? That was a COA grant. That's just a jurisdictional thing. I don't know that we're bound by that, meaning we can't say, well, the rest of this stuff is really kind of the same thing. Yes, Judge Haynes. Even leaving that question aside, these claims, as has been mentioned by Judge Southwick, I think alibi or no alibi, these don't relate to the evidence that we're discussing today. The IAC innocence claim is not dependent on those things, and they were really never presented effectively by Heath's estate writ. There was some discussion about the alibi and, well, you've got to explain the cigarette butt better, you've got to explain why my lighter is there, you've got to explain about the blood on the shoes, it wasn't my shoes. Isn't that all variations on the notion of I was not there? Those weren't my shoes, that I didn't, wasn't the one carrying the lighter, I was somewhere else. That's all variations on I wasn't there and, therefore, I wasn't the guy that committed the crime. Well, not really because the so-called alibi defense was three sentences. There was nothing. It amounted to the statement that King was somewhere else. I mean we can't hang everything on. Okay, but all of these other things are variations on that other than maybe the racist point doesn't have anything to do with where he is. But these other points all have to do with I wasn't there, it wasn't my shoes. I wasn't the one holding the lighter. That cigarette butt, I don't know how it got there, but I didn't put it there. You know, that's all I was somewhere else. That's all part of I was somewhere else, isn't it? It's perhaps it includes I wasn't there, but it doesn't mean that the I was, King was somewhere else. That statement, non-supported by evidence, non-supported by any investigation, non-supported by any even requests for an investigator or something to investigate that, that doesn't mean. I ran a COA on that. And the state court did adjudicate that, for better or for worse. So I guess the point is, you know, I agree you don't want to make this too broad. All I see cases are exhausted by having raised one. On the other hand, you don't want to make it too narrow. Well, you talked about cigarette butt number one, but not number two, and therefore that's a new IAC claim. So tell me your limiting principle. Where do we draw this line between just another kind of argument to support the same claim versus a different claim? I think the line has already been drawn. It was the claim fairly raised in the state court, and there's plenty of cases on that point. I'm forgetting some of them now, but I think Williams goes into some of that. But it has to be. This is not a fairly raising King's claims that are in front of this court in three sentences and an alibi defense and in another claim that was really presented to the state court. Counsel, that seems to be an argument more that no innocence claim was really fairly presented, and therefore these ones you want to talk about now certainly weren't part of the claim. That doesn't seem to be a limiting principle other than to say unless you make one we don't even need to worry about it unless you make one good argument about one issue. And you're saying here he didn't make one good argument about the alibi, so you're not limited. And I don't know if that's what you're saying. I don't know where you get that. What we're saying is that the innocence, IAC innocence claim was not fairly presented to the state court. That's our argument, and I think that the record shows that out. The alibi claim, the director is trying to hang everything on these two claims, and they don't have really much to do at all with what we're doing here other than the fact that maybe he wasn't there includes these claims. So what we're saying here is was the claim fairly presented in state courts? And the answer is no, it was not. And without that, you have no argument here for exhaustion. I would like to briefly get on to the E2 argument. Davila this year described Martinez as an exception to the rule that attorney error does not violate the Constitution. That is attributed to the rule that attorney error that does not violate the Constitution is attributed to the prisoner. That's Davila this year. So because a prisoner with a Martinez claim is not at fault for the procedural default, he has not failed to develop it, so 2254E2 does not come into play. That's one of our main arguments here. But as I said, this is a particularly poor case for the implementation of E2 because Williams and Penholster really do not apply. This case was never adjudicated on the merits in state court. We would respectfully ask the court to reverse Mr. King's. All right. Mr. Ellis, Mr. LaFont, you both have given us very thorough briefs and a lot to think about. We are adjourned.